IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALEXANDRIA LAVELLA,

      Plaintiff,                           13cv0127

                                      **ELECTRONICALLY FILED**

      v.

CHELSEA STOCKHAUSEN,

      Defendant.

**MEMORANDUM OPINION RE: DEFENDANT'S MOTION TO DISMISS (DOC. NO. 6)**

**I.    Introduction**

This case centers on injuries that Alexandria Lavella ("Plaintiff") suffered during cheerleading activities. Doc. No. 1. Plaintiff has sued her cheerleading coach, Chelsea Stockhausen ("Defendant"), for allegedly involving her in dangerous stunting moves, even though Defendant knew Plaintiff had recently experienced a concussion and other head injuries. Id. Plaintiff contends that Defendant violated her constitutionally protected right to be free from bodily injury pursuant to 42 U.S.C. § 1983. On April 15, 2013, Defendant filed a Motion to Dismiss which seeks dismissal of all claims against her with prejudice. Doc. No. 6. After careful consideration of Plaintiff's Complaint (Doc. No. 1), Defendant's Motion to Dismiss (Doc. No. 6) and brief in support thereof (Doc. No. 7) and Plaintiff's brief in opposition thereto (Doc. No. 11), Defendant's Motion to Dismiss (Doc. No. 6) will be GRANTED IN PART AND DENIED IN PART.

**II.    Statement of the Facts**

Accepting the well-pleaded factual allegations as true for purposes of this discussion, the facts of this case are as follows:

In August 2010, Plaintiff was a senior at Peters Township High School and a member of the varsity cheerleading squad. Doc. No. 1, ¶ 7. Defendant was the head coach of the school's cheerleading program. Id. at ¶ 6. On August 23, 2010, Plaintiff was participating in a stunt move and suffered a concussion after she was struck in the head by a flyer. Id. at ¶ 11. Defendant was aware of Plaintiff's injury and symptoms. Id. Plaintiff received medical treatment and was medically restricted from practice for two weeks. Id. at ¶ 12.

Plaintiff returned to practice on September 8, 2010, without restriction. Id. at ¶ 18. During this practice, Defendant had Plaintiff fully participate in stunting practice. Id. Plaintiff was struck in the head by a flyer during practice and Plaintiff suffered concussion-like symptoms. Id. Defendant observed the injury and failed to file a written report of the injury with the high school's athletic director. Id. at ¶ 21. Plaintiff's mother emailed Defendant to inform her of Plaintiff's "repeat stunting-related head injury and related symptoms, her concern about the level of safety at practice and that [Plaintiff] was 'not to stunt until the flyers are under control.'" Id. at ¶ 20. Defendant kept Plaintiff out of the September 9, 2010, practice and the September 10, 2010, football game. Id. at ¶ 22.

Defendant asked Plaintiff to spot gaps and serve as a front-base during a September 11, 2010, soccer game. Id. at ¶ 23. Plaintiff also participated in stunting during practice on September 13 and 14, 2010. Id. at ¶ 24. On September 15, 2010, Defendant kept all of the cheerleaders at stunting practice instead of permitting them to attend their scheduled Immediate Post Concussion Assessment and Cognitive Testing ("ImPACT"). Id. at ¶ 25. During this practice, Defendant directed Plaintiff to serve as a back-base during the middle elevator group with members who were relatively inexperienced. Id. at ¶¶ 27, 28. This was the second most dangerous position in that stunt. Id. The flyer in Plaintiff's group fell onto her. Id. at ¶ 29.

Plaintiff was hit in the head and then fell to the track and hit her head. Id. Plaintiff continued practice, but became disoriented and distraught. Id. at ¶¶ 30, 32. Defendant called Plaintiff after practice, but did not alert Plaintiff's mother of Plaintiff's injuries. Id. at ¶ 31. Plaintiff's mother took Plaintiff to the hospital where she was diagnosed and treated for a concussion. Id. at ¶ 33. Since this concussion, Plaintiff has suffered serious bodily injury, pain and suffering, anxiety, embarrassment, humiliation, loss of enjoyment of life, and has required extension medical treatment and follow-up. Id. at ¶¶ 34-38.

### III. Standard of Review

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.
>
> *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims

3

are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

## IV. Discussion

Plaintiff alleges one cause of action against Defendant: Count I- State-Created Danger in violation of 42 U.S.C. § 1983. Doc. No. 1. Defendant moves this Court to dismiss the case with prejudice because of her qualified immunity from suit and, alternatively, because of the legal insufficiency of Plaintiff's allegations. Doc. No. 6.

42 U.S.C. § 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." Section 1983 is applicable under the Fourteenth Amendment's Due Process Clause which provides that no state shall "deprive any person of life, liberty or property without due process of law . . . ." To recover

4

under Section 1983, a Plaintiff must demonstrate: (1) the deprivation of a right secured by the United States Constitution or federal law and (2) that the deprivation was caused by a person acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Here, Defendant concedes that she was acting under color of state law at the relevant time period. Doc. No. 7, 4. Therefore, the Court's sole inquiry is whether Plaintiff has pled sufficient facts to demonstrate that Defendant's alleged actions caused Plaintiff to be deprived of a Constitutional right or a right secured by Federal law. The Court finds that she has not.

Plaintiff alleges that she was deprived of her substantive due process right to bodily integrity. Doc. No. 1. Individuals have a constitutional liberty interest in personal bodily integrity. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) *citing D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364 (3d Cir. 1992). However, there is no affirmative obligation on the state to protect its citizens. *Id.* Plaintiff acknowledges this and pursues her claim on the state-created danger theory, which is an exception to this general rule.

State-created danger theory requires a Plaintiff to demonstrate all of the following: (1) the harm ultimately caused to the Plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the Plaintiff's safety; (3) there was some relationship between the state and the Plaintiff; and (4) the state-actor used his/her authority to create an opportunity for danger that would not have existed otherwise. *Bright v. Westmoreland Cnty*, 443 F.3d 276, 281 (3d Cir. 2006).

Defendant contends that Plaintiff's position is not legally supportable given the facts alleged because Plaintiff has not met the second element, that Defendant acted in willful disregard of Plaintiff's safety. Doc. No. 7, 6. This element requires that Defendant's actions "shock[] the conscience." *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 2011). In

other words, because Defendant had time to process her actions deliberately, Plaintiff must demonstrate that Defendant displayed a deliberate indifference towards a substantial risk of serious harm to Plaintiff. *See Phillips*, 514 F.3d at 241 ("three possible standards can be used to determine whether state action shocked the conscience: (1) deliberate indifference; (2) gross negligence or arbitrariness that indeed shocks the conscience; or (3) intent to cause harm") *citing Sanford v. Stiles*, 456 F.3d 298, 306 (3d Cir. 2006) *Hinterberger v. Iroquois Sch. Dist.*, 2012 U.S. Dist. LEXIS 138268 (W.D. Pa. Sept. 26, 2012) (McLaughlin, J.).

The Court finds that Plaintiff's allegations do not demonstrate that Defendant's affirmative actions shocked the conscience. Notably, on September 6, 2010, Plaintiff was released by her doctor to resume cheerleading, without restriction. Doc. No. 1, ¶ 17. The only averments against Defendant following this date that could be seen to be affirmative actions on Defendant's part are: having cheerleaders skip ImPACT testing, asking/having Plaintiff participate in stunting, and directing Plaintiff to serve as a back-base during a September 15, 2010, practice (Plaintiff continued practice but was later diagnosed with a concussion). Plaintiff alleges that Defendant "violated [her] ongoing stunting restriction by having her participate in stunting." Doc. No. 1, ¶ 24. However, no such restriction existed. As previously noted, Plaintiff was medically cleared to fully participate in cheerleading by a medical professional. Id. at ¶ 17. Also, although Plaintiff's mother emailed Defendant about her stunting injuries, she only instructed that Plaintiff was "not to stunt until the flyers are under control." Id. at ¶ 20. This statement could not reasonably be seen as an unlimited restriction from all stunting. There was no temporal period prescribed in the email and no individual would have able to control practices such that there was no chance that Plaintiff would be injured. Therefore, "asking" and "directing" Plaintiff to participating in stunting during practices and games does not contradict

Plaintiff's mother's "restriction." There is also nothing in the Complaint that would demonstrate that the practices in which Plaintiff was injured were particularly strenuous or that other injuries had occurred that would alert Defendant that the cheerleaders should not practice stunting because there was a high risk of concussions.

Plaintiff contends that Defendant took affirmative actions which "shock[] the conscience" because she "had time to make unhurried judgments under circumstances allowing for deliberation and forethought." Doc. No. 11, 7. However, Plaintiff made the choice to attend cheerleading practice and participate during games. If Plaintiff was at an increased risk of injury, then the increased risk came from her decision to attend those activities, not directly from Defendant's coaching. There are no factual averments that: (1) Defendant needed Plaintiff's mother's permission to participate in certain cheerleading moves (apart from the parental consent required to participate in sports programs); (2) Defendant knew that Plaintiff was in danger of further head injury from participating in stunting; or (3) that there was any indication that this particular individual was more vulnerable to further concussions. At most, there is an allegation that Defendant knew of "[P]laintiff's continuing headaches," the seriousness of concussions and additional risks from repeat concussions, and she "asked [P]laintiff to participate in stunting." Doc. No. 1, ¶ 23. The core of Plaintiff's allegations center on Plaintiff's September 15, 2010, concussion which occurred after Plaintiff's mother emailed Defendant. At that point, Defendant knew that Plaintiff had suffered a concussion on August 23, 2010, but also knew that she had been released by her doctor to resume cheerleading without restriction. Id. at ¶¶ 11, 17. The Court believes that allegedly violating Plaintiff's mother's "restriction" from stunting does not support a claim for state-created danger because Defendant's actions, in coaching practices

where Plaintiff was present, were not proactive and did not affirmatively expose Plaintiff to further danger.

All allegations against Defendant seem to reduce to actions taken in the course of her coaching duties and unfortunately Plaintiff was injured during some of these cheerleading activities. The injuries that Plaintiff sustained are unfortunate. However, Defendant's actions, even when viewed in the light most favorable to Plaintiff, do not support a claim for state created danger in violation of 42 U.S.C. § 1983. Therefore, Plaintiff's Complaint must be dismissed.[1]

## V. Conclusion

At this stage, Plaintiff has not pled sufficient facts to sustain a claim pursuant to 42 U.S.C. § 1983, therefore, Defendant's Motion to Dismiss will be granted as to all claims against Plaintiff. However, the Complaint will be dismissed without prejudice because the Court cannot say that amendment would be futile. Therefore, Plaintiff will be given the opportunity to amend her Complaint. *Shane v. Gauver*, 213 F.3d 113, 116 (3d Cir. 2000).

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties

---

[1] Defendant also alleges that Plaintiff's Complaint should be dismissed because she is entitled to qualified immunity. Doc. No. 7. The Court will not address this argument at this time because it is unclear from Plaintiff's Complaint which capacity Defendant is being sued in. Plaintiff shall clarify this in any Amended Complaint.